# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JEFFERY EADS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:07-CV-01223-RDP |
| } | |
| **THE CARGILL GROUP LIFE** } | |
| **INSURANCE PLAN FOR OFFICE** } | |
| **SALES AND SUPERVISORY** } | |
| **EMPLOYEES, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on cross motions for summary judgment. Plaintiff filed a motion for summary judgment (Doc. #15) on March 11, 2008. By agreement of the parties, this motion was denied without prejudice on March 12, 2008 (Doc. #18) to allow Defendant The Prudential Company of America ("Prudential") further administrative review. Plaintiff renewed his motion for summary judgment (Doc. #21) on May 29, 2008. Defendant Prudential filed a motion for summary judgment (Doc. #25) on July 9, 2008. The court took these motions under submission on August 11, 2008. For the reasons outlined below, these motions are due to be denied.

**I.     Standard of Review on Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking

for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could [find] for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

Although there are cross motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998). Also, these are the facts for

summary judgment purposes only; they may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

## II.     Discussion

### A.     Standard of Review Under ERISA

ERISA does not promulgate the standards against which a court should measure an administrator's decision denying benefits. *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 108-09 (1989). The Eleventh Circuit has, however, adopted the following mode of analysis to review an administrator's decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict of interest, then end the inquiry and affirm the decision.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), *abrogated on other grounds by Met. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008) (footnotes omitted). Moreover, if there is a conflict of interest, then the reviewing court must consider the conflict as being a factor in determining whether the plan administrator has acted arbitrarily and capriciously. *Glenn*, 128 S.Ct. at 2346; *White v. Coca-Cola Co.*, 542 F.3d 848, 853-54 (11th Cir. 2008). The Supreme Court also held in *Glenn* that where, as here, a plan administrator both evaluates claims for benefits and pays benefits claims, a conflict of interest exists. *Glenn*, 128 S.Ct. at 2348.

### B.    Plan Provisions

Plaintiff Jeffery Eads was an employee of Cargill Incorporated ("Cargill") at their facility in Guntersville, Alabama. (A.F. #1).[1] He began working for Cargill in September 1986 and ultimately progressed to the position of Extraction Operator, where he utilized hexane gas to extract soybean oil. By 2004, he had been performing work activities as an Extraction Operator with Cargill for approximately fifteen years. (*Id.*). While working for Cargill, Plaintiff elected to enroll in a Personal Accident Insurance Plan and a Group Life Insurance Plan, which were administered and insured by Prudential. (*Id.*).

The terms of the Personal Accident Insurance Plan require that a claimant, in order to receive benefits, be totally and permanently disabled, defined as follows:

> **Total and Permanent Disability:**  A person is Totally and Permanently Disabled when:
> 1)    Total Disability exists, and;
> 2)    Total Disability is such that condition (2) of the Total Disability definition below will be met for the rest of the person's lifetime.

---

[1] These facts, contained in Plaintiff's brief in support of his motion for summary judgment, were admitted by Defendants in their reply and will heretofore be referenced as "Admitted Fact" ("A.F."). (Doc. #16; #26)

>**Total Disability**: A person is "Totally Disabled" when:
>1) The person is not working at any job for wage or profit; and
>2) Due to accidental bodily injury;
>   (a) The person is not able to perform, for wage or profit, the material and substantial duties of that person's occupation; and
>   (b) Beyond 12 months after the person sustains the Injury, the person is not able to perform, for wage or profit, the material and substantial duties of any job for which the person is reasonably fitted by the person's education, training or experience.

(PRU 00018-19).[2] This plan also lists several conditions that must be met for coverage to apply:

>1) The person sustains an accidental bodily Injury while a Covered Person.
>2) The Loss results directly from that Injury and from no other cause.
>3) The person suffers the Loss within 365 days after the accident. But, if the Loss is due to Total and Permanent Disability, that Loss:
>   I. Begins within 365 days after the accident;
>   ii. Continues for twelve consecutive months; and
>   iii. Is total, continuous, and permanent at the end of that twelve-month period.
>
>Any benefit for a Loss due to Total and Permanent Disability will not begin until the end of the twelve-month period in (ii) above.

(PRU 00013-14).

Plaintiff also seeks continuation of his group life insurance benefit during total disability. In order to obtain continuation of his life insurance, the following definition of total disability applies:

>You are "Totally Disabled" when:
>
>1. You are not working at any job for wage or profit; and

---

[2] Citations to the record labeled "PRU" refer to Bates Number stamps on Plaintiff's evidentiary material in support of his motion for summary judgment. (Doc. #22, 24).

>    2.   Due to Sickness, Injury or both, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

(Doc. #25-3 at 12).[3]

Plaintiff became eligible for the extension of his group life insurance coverage during total disability on May 7, 2005 and he became eligible for the payment of his personal accident insurance on August 7, 2005. (PRU 00120).

### C.   Plaintiff's Disability Claim

In 2004, Plaintiff's department at Cargill was shut down for regularly scheduled maintenance and he elected to transfer to a work area where soybeans were unloaded from barges. (A.F. #3). On March 7, 2004, while descending a ladder into the hull of a barge, Plaintiff fell approximately eighteen feet and struck his head on the bottom of the barge. (*Id*.). Plaintiff's initial injuries were: multiple rib fractures, clavicle fracture, right basilar skull fracture, cerebral contusion of gray matter, inflammatory changes in his mastoid and old blood in his temporal bones, as well as a concussion. (PRU 00687). About a week after the fall, he began experiencing facial weakness and hearing loss. (*Id*.). In addition, Plaintiff was left with persistent headaches, dizziness, positional vertigo, hearing loss, anxiety, and depression. (*Id*.). About one week after the injury, Plaintiff experienced some weakness on the right side of his face. (PRU 00633). Plaintiff also experienced Tinnitus (severe ringing in the ears). (PRU 00671). Consequently, Plaintiff underwent long-term treatment with Dr. William McFeely and had the following facial and inner ear surgeries: left endolymphatic sac decompression with mastoidectomy and facial nerve monitoring. (PRU 606; 675-76).

---

[3] This policy does not have a "permanence" requirement.

Plaintiff initiated a claim for continuance of Group Life Insurance under his group plan on January 25, 2005. (PRU 00604). On April 12, 2005, Prudential denied that claim. (PRU 00159, 605). On May 17, 2005, Plaintiff submitted a claim for benefits under the Personal Accident Insurance of his Group Policy plan. (PRU 00605). On June 13, Prudential denied that claim as well. (PRU 00606). The basis for the denial of the claims under each policy was that Plaintiff's medical conditions did not prevent him from performing the duties of any occupation for which he was qualified (a determination that he was not "totally disabled") as required by both policies. (PRU 00605). Additionally, for the personal accident insurance claim, Prudential determined that Plaintiff was not disabled from working for the rest of his life ("totally and *permanently* disabled"). (PRU 00606). Plaintiff appealed these decisions and, by letter dated August 18, 2005, Prudential upheld its determination. (PRU 00606).

Prudential received a second appeal request on January 17, 2007. (PRU 00727). As part of this second appeal request, updated medical records, including letters and depositions from his attending physicians, were reviewed on several occasions by a registered nurse. (Doc. #25-10; 25-11). In addition, Prudential requested an independent organization to have the claim reviewed by a physician who specializes in occupational medicine. (PRU 00725-26). An independent physician, Dr. Elena Antonelli, issued an independent peer review dated April 6, 2007, which concluded that Plaintiff was not totally disabled. (PRU 00489-500). Based upon this information, Prudential upheld its decision to deny Plaintiff's claims due to Plaintiff not being disabled to the point of being unable to perform the job duties of any occupation, as required by the policy terms. (PRU 00690).

**D.     Genuine Issues of Material Fact**

In reviewing a plan administrator's denial of benefits, the district court must weigh multiple factors to determine whether the decision was arbitrary and capricious.[4] *Doyle v. Liberty Life Assur. Co. Of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008). As the Supreme Court in *Firestone* and again in *Glenn* held, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (*quoting* RESTATEMENT (SECOND) OF TRUSTS § 187, Comment *d* (1959)); *Glenn*, 128 S.Ct. at 2349. "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Glenn*, 128 S.Ct. at 2351. As noted above, where the plan administrator both evaluates claims for benefits and pays benefits claims, a conflict of interest exists. *Id*. at 2348. Because the evidence of record shows vast disparities in the opinions of both medical professionals and other independent fact finders and because a conflict of interest exists in this case, summary judgment in this case is inappropriate.

Prudential, in its brief in support of its motion for summary judgment, argues that its decision to deny Plaintiff's claims was reasonable because it

> was based upon a review of numerous medical records of the plaintiff by a registered nurse, a thorough analysis of these records by an independent consulting physician, two subsequent analyses of these records by the independent consulting physician, and a vocational assessment by a vocational rehabilitation specialist to identify jobs that the plaintiff could perform based upon the limitations indicated.

---

[4] "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008) (*quoting Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989) (internal quotation marks omitted).

(Doc. #25 at 25). The court, however, is not convinced.

Upon review of the summary judgment record, these multiple pieces of evidence appear to be based solely upon the review performed by the independent peer review physician, Dr. Antonelli. The registered nurse's reports (apparently completed by a Prudential employee) rely exclusively on Dr. Antonelli's analysis. (Doc. #25-10, 25-11). Indeed, they appear to be little more than a summary of Dr. Antonelli's findings rather than an independent review of the record. Likewise, the vocational assessment conducted by Gregg Schwartzkopf at Prudential's request appears to accept Dr. Antonelli's assessment wholesale and simply lists occupations available for individuals who have the restrictions and limitations identified by Dr. Antonelli. (Doc. #25-8).

Dr. Antonelli's report concludes that the medical evidence with which she was presented supports "significant functional limitation on the basis of post-concussion syndrome after significant traumatic brain injury with a basilar skull fracture, persistent headache and dizziness/vertigo subsequent to the time period in question of August 7, 2004, and subsequent to his most recent surgery of August 2, 2006, at which time Plaintiff appears to have improved." (PRU 00496). She found, based on the objective medical evidence of record, as she classified it, that Plaintiff's limitations do not prevent him from performing any job for wage or profit, as is required by the policies. (PRU 00498). She disposed of the contrary opinions of Plaintiff's treating physicians on the basis that they based their decisions, in part, on subjective complaints, rather than purely on objective medical evidence.[5] (PRU 00499).

---

[5] The policies at issue do not have a requirement that the disabling condition be shown exclusively by "objective" medical evidence. Thus, it is not clear to the court why subjective findings by Plaintiff's treating physicians would disqualify their opinions.

Dr. Antonelli gave great weight to Dr. Walker's conclusion that Plaintiff's "test results are invalid." (PRU 00497). However, though she mentioned the point in her summary, her conclusion does not take into account Dr. Walker's further indication that "there was no way to determine the cause of such invalidity." (PRU 00497; 00494). Nor did Dr. Antonelli reconcile the fact that, with regards to Plaintiff's ability to work, Dr. Walker deferred fully to Dr. McDaris and Dr. McFeely. (PRU 00632).

Dr. Antonelli reached the opposite conclusion of Plaintiff's treating physicians, who all concluded that Plaintiff is unable to perform any work for the rest of his life. Dr. McFeely, one of Plaintiff's treating physicians, whose treatment record spans nearly five years, indicated that he does not expect Plaintiff to return to any sort of employment at any time in the future. (Doc. #25-15; PRU 00157). Similarly, Dr. McDaris opined on November 21, 2005 that Plaintiff could not hold a job at that time, nor is he likely to be able to hold a job in the future.[6] (PRU 00125). While it is true that plan administrators are not required to accord special weight to the opinions of a claimant's treating physician, they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker v. Nord*, 528 U.S. 822, 834 (2003). In light of the opinions of Plaintiff's treating physicians (including Dr. Walker, who deferred to the opinions of Dr. McDaris and Dr. McFeely), there is a genuine issue of material fact as to whether Prudential arbitrarily discredited reliable evidence.

---

[6] Dr. Antonelli makes much of an August 25, 2004 note by Dr. McDaris that Axert gave him complete relief from his headaches, but fails to take into account Dr. McDaris's later statement in his November 21, 2005 letter that Plaintiff has been treated for headaches with little overall benefit. (PRU 00496; 00125).

Prudential's position is also questionable because it reached the opposite conclusion of two separate independent fact finders, a Social Security Administrative Law Judge and an Alabama Circuit Court Judge.[7]  (PRU 00503-15; 00094-96).  Administrative Law Judge L.K. Cooper, Jr. found Plaintiff to be totally disabled on February 26, 2007.[8]  Furthermore, in a highly disputed workers' compensation suit in the Circuit Court of Marshall County, Alabama, the court found that "Jeffery Dean Eads [ ] is permanently and totally disabled."  (PRU 00094).  Considering the above factors, the court determines there is a genuine issue of material fact as to whether Prudential had a reasonable basis for its decision and neither party is entitled to summary judgment at this time.

Finally, there is some question as to how much weight the court should afford to the conflict of interest in this case.  *Glenn* indicates certain situations where a conflict of interest should be given great weight, where circumstances suggest a higher likelihood that it affected the benefits decision. *Glenn*, 128 S.Ct. at 2351.  However, where the administrator has taken active steps to reduce potential bias and to promote accuracy, the conflict should be afforded less weight.  *Id*. The Sixth Circuit in *Glenn*, gave the conflict some degree of weight, but focused more heavily on the other factors.  *Id*.  (*citing Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006)).  The record in this case

---

[7] The district court may consider these determinations of disability in reviewing a plan administrator's determination of benefits.  *Kirwan v. Marriott Corporation*, 10 F.3d 784, 790 (11th Cir. 1994).

[8] Defendant claims that this evidence is not relevant because ALJ Cooper did not make any finding that Plaintiff was "permanently" disabled.  While it is true that the ALJ did not make a finding as to the permanence of Plaintiff's disability, Defendant relied on its contention that Plaintiff is not totally disabled in denying his claims, directly contrary to the ALJ's findings.  Additionally, for continuation of his group life insurance plan, Plaintiff need not make a showing that his total disability is permanent.  Thus, though this evidence is relevant as to Prudential's denial of both insurance claims, it is especially probative with respect to its denial of continuation of group life insurance, as it tends to show that Plaintiff is totally disabled – an element of both policies.

indicates that a conflict of interest may well have swayed Prudential's decision in light of the fact that it chose to credit only its third party peer reviewer (who was apparently given instructions to only credit what she deemed to be "objective medical data") despite contrary conclusions from every other medical professional and independent third party fact finder.

Though much of the parties' briefs are devoted to discussion of a conflict of interest, it is important to remember that this is just one of many factors the court must consider in deciding whether the administrator's decision was arbitrary and capricious. While one factor may act as a tiebreaker when the other factors are closely balanced, in a case such as this one – where the factors don't appear to be very evenly balanced, based on the summary judgment record – the existence of a conflict of interest may not ultimately matter. *Glenn*, 128 S.Ct. at 2351. As in *Glenn*, the other factors indicate, at this point, that the conflict played a role in the administrator's decision because of (1) the way Prudential characterized and selectively parsed through the medical record and (2) its failure to truly deal with the findings of the Social Security Administration and Marshall County Circuit Court. However, because there is also some evidence in the Rule 56 record that supports Prudential's decision, findings of fact must be made with regard to the credibility and probative value of this evidence. Such findings of fact are not appropriately dealt with at summary judgment, but rather must be resolved at trial.[9]

---

[9] The court notes that the evidence in the summary judgment record tends to weigh in Plaintiff's favor, especially in light of the conclusions reached by the Social Security Administration and the Alabama Circuit Court (which found Plaintiff to be permanently and totally disabled despite vigorous opposition by Cargill). As noted above, however, the court will only grant a motion for summary judgment if there is no genuine issue of material fact. Here, genuine issues of material fact exist, and summary judgment is not appropriate, though the evidence seems to strongly favor one side over the other. Furthermore, summary judgment is inappropriate because of the deferential standard of review. Though the great weight of the evidence seems to favor Plaintiff, if Prudential had a reasonable basis for its decision, it must be affirmed. This will require the trier of fact, in this

**III.     Conclusion**

As discussed above, neither Plaintiff nor Defendant has met its burden on summary judgment of showing that there exists no genuine issue of material fact and that one side is entitled to judgment as a matter of law. Plaintiff and Defendants' cross motions for summary judgment are, therefore, due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this ____23rd____ day of March, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

case the court, to make evidentiary findings. Though the court will ultimately be called upon to make findings of fact in this case, at the summary judgment stage the court must reserve these decisions and rather only determine whether there are genuine issues of material fact. *See Chambers & Co.*, 224 F.2d at 345.